Relocation. Barry Paisner for the plaintiff. May it please the court, I'd like to reserve four minutes for rebuttal. All right, please watch your time. The time showing is the total time you have remaining. Thank you, Your Honor. I would like to review the three issues. First, the Office of Navajo & Hopi Indian Relocation misapplied the law of self-support and did not recognize that the plaintiff was a self-supporting young adult as of July 7, 1986. Second, in derogation of its own rules, defendant refused to give any value to Ms. George's work for her brother-in-law because she could not provide documents of employment. Third, the agency found that the plaintiff and her aunt's testimony about cash employment was not credible without basing the findings on substantial evidence. This case arises out of the relocation of 15,000 traditional Navajo people. The United States interceded in a long-term land dispute between the Navajo tribe and the Hopi tribe and passed on December 22, 1974, what we now call the Settlement Act. The Settlement Act mandated the forced relocation of agrarian self-supporting Navajo families. The federal court, prior to the Act, had partitioned the disputed land into the Navajo Partition Land and Hopi Partition Land. Any Navajo residing on the Hopi Partition Land were subject to forced relocation. Ms. George's family's home was- Counsel? Yes. What is our standard of review? Excuse me? What is our standard of review? It's substantial evidence and arbitrary and capricious, Your Honor. So we're reviewing the decision of the hearing officer, correct? Yes, Your Honor. The hearing officer, it is our position the hearing officer erred. The question is whether or not there is substantial evidence to support the determinations made by the hearing officer, not whether we agree or disagree with the outcome. Do you agree that that's what we're looking at? Substantial evidence and arbitrary and capricious, Your Honor. So part of the argument is we believe that the hearing officer misapplied the law of the agency, creating an arbitrary and capricious decision, and then we believe the credibility findings are not based on substantial evidence. Do you think it was arbitrary for the hearing officer to request some type of documentation regarding the amount of wages that were earned? I think in this case, Your Honor, it was arbitrary and capricious because the agency has recognized, and this court has recognized, in the Celsi decision that undocumented income is often used by the agency for the threshold amount of head of household. So I think in this case, it was. But is it required to forego documentation under that case? Is the agency required? I do not believe that it's a requirement to forego documentation, and in fact, Ms. George provided a lot of documentation. I think what is at issue is when she was involved in a traditional form of income that has always been recognized by the agency as a cash income. She was selling arts and crafts for her brother-in-law, and that should not have been required as requiring documents of employment. Can I push back on that a little bit? As I read the memorandum, I guess I split up the memorandum and the manual. Neither one of them seems to be quite categorical. They do suggest that in certain circumstances, in fact, the memorandum says in some circumstances, individuals may be able to show that they are self-supporting without the benefit of tax returns and wage statements because of the lifestyle of the reservation. But it doesn't really go into a lot of detail about those circumstances. I guess I'm wondering how strong your argument is. To double down on that, go to the manual. It says the manager, where there's not proof of cash income, the manager will consider the applicant's unique circumstances and authorize a field investigation or other substantiating records. And so even that manual suggests that there will be something. It's just a more lenient standard of what that something would be. And so I guess I'm wondering how strong your arbitrary or capricious argument is when these documents or the internal procedures don't seem to be as definitive as I think you pushed them in your brief. Well, Your Honor, I think you have to look at the whole record in Ms. George's case. Well, and by the way, I mean, I think that there's a good argument that something more should have been done here. But that's not really what we're looking at. We're not reviewing this in the first instance. We're saying, was the hearing officer arbitrary or capricious in looking at this evidence and discounting apparently the $1,300 that was claimed to be earned by selling? And I'm going to get it wrong. Is it the kachina dolls? Yes, sir. Okay. And part of that's driven by the facts as I looked at them because I the petitioner here, she says she did that job for two or three years. And then she only focuses on the one year. Now, maybe that's because the other years were after the cutoff. So you could correct me on that. But then the other part of it is that there's a bunch of income that she has that she didn't use or support that were put on her. I apologize. I think it was a social security sheet. And there's nothing that shows up as to this. And so it suggests that she was good at putting forward this cash income in other contexts for government records, but she didn't just do so here. So anyway, I know I've packaged a lot in that. Why don't you unpackage my concerns? I think you have to look at the statute and the regulations in reference to Ms. George's unique case, your honor. So she had to prove she was self-supporting on July 7th, 1986. That's because that's what the regulations say was represented to Congress that this whole process would be over in 1986. Here we are in 2020. But so she had to prove. So what the agency did that was arbitrary and capricious was they applied their presumption of $1,300 a year to show self-support as an irrebuttable presumption in a seven-month period. So Ms. George proved in a seven-month period through documented wages that she had made, she was short, if you will, $117 in that period. And the hearing officer because she worked for the first six months for her brother-in-law. So the hearing officer who said that he did not discount that she actually worked for her brother-in-law. What he said was he didn't believe how much money they made. So all he had to do was credit her $117 in that period. So in 1985, every relocatee had 12 months to meet that presumption. But the hearing officer erroneously and arbitrarily applied this year presumption to a seven-month period. And furthermore, when the presumption obviously didn't apply, he did not look at this young woman's facts to show that she was self-supporting on as of the regulations as of July 7th, 1986. She has to be self-supporting. He did not look at the fact that she was living with her girlfriend. She was paying rent. She was working for Coconino County at a good job. You know, that $1,300 breaks down to $25 a week. It's general assistance. That's what they're basing it on. She was making more than general assistance. The regulations say as of July 7th, 1986. That testimony, that evidence was before the hearing officer. He did not apply it. Instead, tried to apply an agency income presumption for a 12-month period on a seven-month period. And then he says that in order to get that $117, or he had said $225, that he would not recognize any income from selling kachina dolls for her brother-in-law, Mr. Ticinagini. Zero. But he bases almost every one of his findings and facts on Ms. George's testimony, except that one. I'm sorry, Your Honor. Am I interrupting you? I've been listening to what you're saying. And part of the question I have then, so is your argument then, not that it was arbitrary or capricious to reject the full $1,300, or it was arbitrary or capricious to reject the full $1,300, that had he had the hearing officer just credit her 10% of that or 20% of that and discounted it because there was no documentation, that that would have been enough? Is that your argument? Well, that's part of the argument. Yes, Your Honor. I mean, he's not saying she never worked for Mr. Ticinagini. He's just saying that even though there's unrebutted, consistent testimony from her and her aunt that they were not given any cash, any employment or wage documents, that is consistent, unrebutted testimony. But the hearing officer is saying, well, as a matter of basically personal policy, I do not recognize and I find not credible, inherently not credible, testimony from 27 years ago regarding employment, unless there's corroborating documents. Well, that is an opposite of the agency's policy. Well, and that's my concern is I'm not sure it is opposite. Because if you look at the manual, it says that when there's not, you know, evidence of proof of cash income, he can look at the unique circumstances and authorize a field investigation. Doesn't seem to be applicable here. Seems like that would be for farming or other substantiating records. Now, your argument, I guess, would be here. The other substantiating records are the testimony of the sister or the other witness. And that should have been enough. But I mean, I just don't know that it's as clear cut as you've tried to make it under their internal policies. But I appreciate you elaborating. What is being ignored, Your Honor, by the hearing officer is what the regulations say that as of July 7th, 1986, that Ms. George had to prove she was self-supporting. And there's no analysis on that at all. Zero. What is focused on is the $1,300 agency presumption for a year. That is what's focused on. But what about the regulation? I mean, this hearing officer and this agency has to follow their own and when presented with the evidence, it's not, it doesn't even go into the analysis. All that goes in is a misapplied presumption of $1,300. And it is a presumption. And she was awful close. And she had lost her ancestral farmland by an act of Congress. And she deserves more. She deserves more than just having the hearing officer say, no, it's my personal policy. I don't accept, I don't accept anything but written documentation. And then he actually states that their testimony is not evidence. He says there's no evidence of their working in this traditional type of income selling to Chinas, door-to-door to businesses. You know, that is a very traditional enterprise in the West for Native Americans. Counselor, you've exceeded your time. Are there any other questions from the panel? All right. We'll give you one minute for rebuttal. Let's hear from the government. Hello, is the court ready? Yes, we are. Hello, my name is Andrew Bernie and I represent the United States. The district court correctly affirmed the agency's finding that Ms. George failed to carry her burden, proving that as of July 7th, 1986, he had reached the point of being her own self-supporting head of household, where she was 20 years old and spent virtually all of the previous 14 months living with her sister, where she did not pay for her own rent, her own transportation. And as part of that agency decision, the hearing officer reasonably determined that Ms. George's claim that she spent the period from May 1985 to June 1986, earning several hundred dollars per week, traveling around the country selling purses, dolls, and lamps to various unidentified businesses and individuals was not credible and not reliable. This court should affirm. If I could, I'd like to turn first to this documentation question and then I'll turn to the broader argument that Mr. Paisner made that irrespective of the income, that the hearing officer has ignored clear determinants of self-support. Certainly, I don't think even Ms. George says that there's anything in the APA or the Settlement Act itself that obligates the agency to accept undocumented claims of income, so it really does. Well, let me ask a question, Mr. Bernie. I mean, do you agree that the $1,300 in yearly earnings is not an absolute rule to establish the head of household status? I think that because the $1,300 is based on a calculation of the amount it takes under the general assistance payments at the time to be self-supporting, that an applicant who does not show that she earned $1,300, it's hard for me to imagine a case, at least for a single person, where they would demonstrate that they were a head of household. I think there could be a situation where a person earns slightly more than $1,300, but in which they aren't paying for their own rent, their own transportation, but the head of household term means in every context where you were aware of is that you're actually paying your own expenses. Mr. Bernie, just a early income of $1,299. Can this person show she's a head of household and other factors established that she is self-supporting, that she lives alone, she pays the rent, that does not depend on anybody? I guess, why wouldn't that be possible? I'm sorry, Your Honor. I'm not sure I heard the first part of your question, but I think if an applicant clearly showed that she was a living alone and she was paying her own rent and paying for her own expenses, but couldn't show $1,300, that might be, that could be sufficient, I suppose. But here, the point I was trying to make is that both of these determinations flow in the same direction. Not only did the hearing officer find that there wasn't $1,300 in documented income, but it's undisputed. Ms. George herself concedes, and this is on page 107 of the act. I'm sorry, I can't hear you. What did you say? It's undisputed what? It's not disputed that apart from the hearing officer's finding that Ms. George failed to show $1,300 in income, that from May 1985 to June 1986, when she lived with her sister, she was not paying her own rent, her own food, or her own transportation. She was self-supporting herself at that point. I mean, she wasn't, you agree she wasn't listed with the family, that the family did not list her, where her dad, she was not listed as one of those dependents, isn't that correct? She was not living with her parents at the time, but she was, but there's no, but that's different from the question of whether she was supporting herself. We would certainly say that if you're living with somebody and not paying rent or your own expenses, which she admits on page 107 of the excerpts of record, you are not, you are not maintaining and supporting yourself. All right. I thought that she was, there was evidence to say that she was in fact helping her parents, that she was living independently of her parents. She was helping them. She was working on her own. I mean, and more or less, you know, allowing herself to live in that apartment with another person, to have a roommate. Are you saying you can't have a roommate and be self-supporting? Oh, no, your honor. So, so I'm just, I think it's important to separate two time periods. So from May, from May, 1985 to June, 1986, the testimony is she's living with her sister, not paying her own rent, her own food, her own transportation. So we would say clearly not supporting, even though she's living apart from her parents, we would say clearly not supporting herself during that. It is true that in June, 1986, a month before the cutoff date, she said, she claimed, she said that she moved into an apartment with her friend, but Ms. George has never alleged, let alone proved that she contributed to the rent of that apartment. Mr. Paisner said she was paying rent. That is not in the record. We pointed this out in the district court and the district court pointed this out in his decision on page 355. So we don't think, even if that narrow window of a month before the cutoff date were sufficient, there just isn't evidence in the record. So where, where was she living from May, 1985 to June, 1986? With her sister. Okay. And you, but you also, you agree that she made a thousand, over a thousand dollars from January to July of 1986. She, she, she, she, I think, I think the agency's calculation was she and there was two separate calculations. The denial letter calculated at 1,181. And then there was a post hearing brief where O'Neill, both of these were O'Neill's calculations that it was 1,074. So both of O'Neill's calculations have her at about $1,100, which would just bring her just short of the $1,300. And so what I'm perplexed by, and what I just, it doesn't seem like the, the hearing officer here looked at these other factors at all. He was simply focused on this $1,300 and treated it as an absolute rule. And it seems like you, you, you all, the O'Neill, the relocation people represent don't treat it as an absolute rule. And so I'm trying to figure out if that's enough to, you know, is that arbitrary and capricious when it simply focused on the $1,300 and especially that the $1,300 wasn't raised by the, or she didn't make it by selling Kachina dolls. There was this almost, you know, unique, you know, focus, singular focus on the Kachina dolls. And it doesn't look like, and it looks like the, the, the hearing officer should be looking at all of the other evidence in the record. And it, that, that's what causes me pause here. Well, your honor, I mean, I got a couple of points in response to that question. I mean, first of all, the, the, it's, it's undisputed that to meet the $1,300 before the regulatory cutoff date of July 7th, 1986, she needs the income that she claims that she earned selling dolls for her brother-in-law. And just to correct something. Well, can I back up? She doesn't need the full income. She just needs a small portion of it. Right. $150. Right. But, but, but the hearing officer found, and I, this is an important point. I just want to correct something opposing counsel said. He said the hearing officer didn't dispute that she worked in some capacity for the brother-in-law. He just disputed the level of income. That is not correct. You look at the hearing officer's decision, page 166 of the excerpts of record. Applicants and Cecilia Sam stories about traveling throughout Arizona and New Mexico to sell kachina dolls and lamps fashioned by applicants, brother-in-law are not believable. So the finding was not just that the level of income was implausible. The finding was based on documentation, based on the other reasons we've set forth in our brief that, that there was not no credible or reliable evidence that this alleged, this alleged employment exists. And on the question of self-support, your honor, the reason why I think the hearing officer focused on the $1,300, first of all, because the agency, not only because the agency has used it as a proxy for self-support, but also that is the issue the parties were focused on. If you look at, if you look at Ms. George's post hearing brief, that's pages 150 and 58 to 58 of the excerpts of record. The, the, I don't think she ever even expressed the argument that even if the hearing officer didn't find that she may have met the $1,300 threshold, she could. Okay. So that, the reason the hearing officer, we don't think can be faulted for focusing on the issues as framed by the parties, but in any event, what I would say, your honor, isn't it, I mean, isn't it the obligation of the hearing officer to look at all of the other evidence in the record? Yes, but I think, I think the hearing officer did that. The hearing officer noted that Ms. George was not paying her, her, it was not paying her own rent or other expenses while she lived with her sister. What about supporting her parents? So your honor, the only, the only evidence, the, she was not living with her. She was not living with her parents at the time. I mean, the only evidence of the record that we're aware of that she's pointed to do is there's this statement from her own testimony in the transcript, I think on pages 107, that when she went to visit her parents, she would take a bag of groceries. I don't want to disparage, I don't want to disparage what she did, but I don't think there was any contention or anything the record would support that she was actually supporting her parents in the fact that she just brought items with her to her parents. Can I back up to, okay, so now the, the position seems to crystallize where the hearing officer said, I just don't believe that the kachina dolls were being sold. I don't believe that employment existed. And what I want to know is what was the basis for that? Because now you've got a hearing officer making specifically an adverse credibility finding. So it seems like the, there has to be substantial evidence to support that. What is the evidence to support that she was just flat out making it up? So, so your honor, I think, I think, I think there were, I think there were, I think there were basically four pieces of evidence. If you look at the decision, I mean, the first, the first is the lack of documentation. I don't think I'm going to have time to talk about the agency. Yeah. And I don't think you should, cause I don't think that particularly helps you. So keep, what's the others? Okay. The, the, the, the, the, the second was, was her story of about why she supposedly left the job. The hearing officer found it significant that she didn't give a clear reason why she supposedly left this job where she was paid more and her jobs where the pay was less under more difficult conditions. The third is the hearing officer concluded that the scale of the business didn't make sense. He would noted that in order for her to be paid a hundred to $250 per week, or her aunt to be paid the same amount for, for the front, for the brother-in-law to pay his pay for the cost of his own labor gas and to still turn a profit scale of the merchandise sold would be enormous. And the fourth was the passage of time and the unreliability. I mean, that, that pertains more to the dates and amounts, but I mean, it's, it's, it's worth noting that Ms. George herself in her own application only identified 1985, not 1986 as a period during which she, she sold these dolls. I think when you look at all that together and the hearing officer's analysis of the testimony, which as judge Rawlinson noted is substantial evidence and Ms. George was required to prove. But the lack of documentation and the passage of time, I just not sure that those are strong justifications for just to support substantial evidence. I mean, because the lack of documentation, the hearing officer never explained why her, by Ms. George's explanation, I didn't have it all along. She never said, we didn't keep, she said were kept by my brother-in-law and I don't know where he is at And then the, the hearing officer seems to fault her for not maintaining receipts that she admits she never had. And it's been 20 over 25 years ago. So how does that establish substantial evidence to support his findings? Well, your honor, I mean, it's, it's, it's correct. She said she never had it. I mean, there's, there's very little, she provided very little in the record describing any efforts she may or may not have taken in the four years between the administrative correspondence and the hearing. But I take the point that she didn't have it. I mean, I think, I think the, the lack of documentation is itself a sufficient reason just because it is not just reasonable on its face, but it is consistent with on here policy. I'll just, if I could just briefly, I mean, I would encourage the court if nothing else, since Mr. Paisper has put it to issue to look at pages 271 and 278 of the excerpts of record, not, not all. I think, I think judge Nelson referred to the sources is not categorical. I would go further. Both of them expressly say that with narrow exceptions are not applicable here on here expects documentation. So I mean, the on here manual says single applicants must provide proof of income and it provides a list documents that are required. And Ms. George was informed of that throughout the administrative process. But there is the memorandum that says that on all cases, you don't need to do that. And especially when there's a traditional lifestyle. And I think that the traditional lifestyle here, I mean, you have to acknowledge that selling kachina dolls, you know, is something very unique to the, to the traditional lifestyle of the Navajos. And so I'm trying to figure out why you're not following your memorandum when it goes to that. That's why there's some internal inconsistencies that I see with respect to your memorandum and whether you follow it in certain respects and then you don't in other respects. No, I, with respect, with respect, Judge Mardia, I don't think that's correct. I think that if you look at the crystal memorandum, this is page 271 of the, of the excerpts of record. If that's worth five, it sets forth five categories of individuals. The most, the most relevant portion is where it says generally that individuals who can produce documentation showing a consistent level of income, and then it speaks of requiring a heightened showing for people under 21 like Ms. George. When it is talking about the exception for people who don't, who perhaps can make that showing without documentation, it's because they're showing, because of the lifestyle, who are working odd jobs on the That's somebody who is engaged in babysitting while on the reservation. This was not on reservation activity. It was working for her brother-in-law's business off the reservation, traveling across states in a full-time job for an entire year, not an odd job on which she occasionally earned income. That plainly does not fit in, even if the crystal memorandum was binding, that plainly does not fit into the narrow circumstances. Well, I, I'm sorry. I don't, it's just, it's just hard to reconcile, I guess, because anybody who's familiar with the reservation and the Navajo reservation knows that selling kachina dolls, you know, and going around, you know, the reservation and other parts of the state, I think most people would consider that an odd job than rather a regular form of employment, no matter how much, you know, you're making. It's just not a, it's not the typical, it's not the typical type of job that you would expect, like working at the count. But, you know, that's, I'm just curious, because you, you have to apply these, these, these rules within this memo to the reservation. I mean, this is a very unique relocation process that's going on here. And what's required, you know, of this, this person to show what was happening in 1986. It just seems like the hearing officer may not have taken into account some of these provisions in the memo, which to me, it seems like that he may have been a bit overly focused on the $1,300 kachina dolls. O'Neill had two separate calculations that were around. And then it doesn't look to me that the hearing officer really took into account the other evidence of her self-support. And that's what's been giving me a, you know, it's been a hurdle for me in this case. I see I'm well over time. I could briefly respond, but, so, I mean, I would just say, I would just say very quickly, I mean, on the Crystal Memorandum, I just don't think this meets the terms of what this is talking about. This is, this is off-reservation employment, not odd jobs on the reservation. It's just not what the Crystal Memorandum is referring to. And on the other indicators of self-support, I don't think I can improve on what I said before, just that it is clear whether you look, when you look at the facts for living with her sister, not paying her for her own rent or other expenses, not even alleging, let alone proving that she contributed to the rent for the apartment she briefly lived in before returning to the reservation later in 1986. I don't think there was any legal error. I mean, the one thing I will say is that if you thought the hearing officer's decision was wanting in some respects, for not analyzing a particular issue or piece of evidence, the remedy would be consistent with the Supreme Court's decisions in this court's case. That would be a remedy to address those issues, not a reward. But we think the hearing officer's decision was sound. All right. Thank you, counsel. One minute for rebuttal. Thank you, Your Honor. I think it's telling that the government, again, focuses on the $1,300 presumption and tries to ignore the fact that the regulation says her burden is to prove, as of July 7th, 1986, she was self-supporting. The evidence clearly demonstrates she was living in an apartment with a girlfriend. When asked why she left a higher-paying job, she said, I wanted to support myself, live on my own, and share rent and stuff, you know. This is what she said, explaining what her 20-year-old self, why she would do something like that. Does the record reflect that she did, in fact, meet expenses when she was sharing the apartment? Well, the only statement is what I have said, Your Honor. And I'm sorry, I was looking for the record citation. But she says, when asked by the United States why she left the job, she said, I wanted to be on my own, support myself, you know, pay rent and stuff like that. That's the testimony. I think that's enough. I think, in fact, that there's no question she was living, you know, how can she, how can the United States say, you're not self-supporting, even though when she's living with her sister, even though she's helping support her parents, she's working for her brother-in-law, Mr. Sister's house. Then in June, when she moves into a girlfriend's house, and is no longer with her sister, and is making the required income, she still isn't self-supporting. You know, the burden on this applicant has been made totally impossible. You know, she's got to explain what she did 27 years ago, because of the total disregard of the agency, of the rights of the people there to relocate. And now they're saying, well, when you're living with your sister, even though you're working, you're not self-supporting. And guess what? When you're living with a girlfriend in an apartment, paying rent and working for Coconino County, as of July 7, 1986, you still are not self-supporting. I mean, this is not the way, this is, she is being treated arbitrarily. And the hearing officer, to nail it down, says it's not credible because my personal policy, and this is in the record, that if it's 27 years ago, and you don't have documents, you're not credible. And then he goes on and he tries to give some sort of basis, and this is in the record at 231, he extrapolates without any information on the sales, the amount of sales, the quantity, the quality, that they're going to sell him for $50. He is making $169,000 per year selling kachinas, and that he could not, that Mr. Ticinogini could not afford to pay Ms. George $6,500 for her work in 1986. You know, it's argument, it's just argument, and by the hearing officer, it's not analysis, he's not giving you any analysis. He's saying he's got this predetermination that without the documents it's not credible, and he gives no other analysis. And the reason this court has consistently said that it needs to be based on, that credibility findings need to be based on substantial evidence, is to avoid predetermination by the hearing officer. All right, thank you counsel, you've exceeded your time. Thank you to both counsel, we understand your argument. The case just argued is submitted for decision by the court.
judges: Rawlinson, Murguia, Nelson